CENTER FOR DISABILITY ACCESS
Ray Ballister, Jr., Esq., SBN 111282
Mark Potter, Esq., SBN 166317
Phyl Grace, Esq., SBN 171771
Dennis Price, SBN 279082
<u>Mail</u>: PO Box 262490
 San Diego, CA 92196-2490
<u>Delivery</u>: 9845 Erma Road, Suite 300
 San Diego, CA 92131
(858) 375-7385; (888) 422-5191 fax
sarag@potterhandy.com

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **Shirley Lindsay**, <br><br> Plaintiff, <br><br> v. <br><br> **6310-6318 Van Nuys Blvd, LLC,** a California Limited Liability Company; <br> **Anibal Barrios**; <br><br> Defendants. | **Case:** 2:16-CV-00917-PSG-E <br><br><br> **PLANTIFF'S REPLY TO DEFENDANT'S BRIEF IN OPPOSITION** <br><br> Date: July 17, 2017 <br> Time: 1:30 p.m. <br> Ctrm: 6A (6th Floor) <br><br><br> Hon. Judge Philip S. Gutierrez |

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................... i

TABLE OF AUTHORITIES ..................................................................... ii

PLAINTIFF'S REPLY BRIEF ................................................................... 1

    I.    ALLEGEDLY WITHHOLDING EVIDENCE .......................... 1

    II.   INJURY IN FACT ........................................................................ 1

    A.   LEGAL STANDARD ................................................................. 2

    III.  THE PARKING LOT HAD AN OPEN GATE ......................... 3

    IV.  THE ALLEGEDLY MALFUNCTIONING GATE .................... 4

    V.   LIABILITY OF TENANT ONLY LOT ...................................... 5

    VI.  PROPERTY OWNERS ARE LIABLE FOR ADA VIOLATIONS ON THEIR PROPERTY ................................... 6

    VII. UCRA CLAIM ............................................................................. 8

    A.   PROVING DAMAGES .............................................................. 8

    B.   DEFENDANT INCORRECTLY CITES CAL. CIV. CODE §55.56 (2)(A) ................................................................................ 9

    VIII. PRAYER ...................................................................................... 11

# TABLE OF AUTHORITIES

**Cases**

*Botosan v. Paul McNally Realty*
   216 F.3d 827 (9th Cir. 2000)............................................................. 6, 7

*Donald v. Cafe Royale Inc.*
   218 Cal.App.3d 168, 183 (1990) ........................................................ 8

*Feezor v. Del Taco, Inc.*
   431 F.Supp.2d 1088, 1091 (2005) ...................................................... 9

*Hubbard v. Twin Oaks Health and Rehabilitation Center*
   408 F.Supp.2d 923, 932. (2004) ......................................................... 9

*Johnson v. Wayside Prop., Inc.*
   41 F. Supp. 3d 973 (E.D. Cal. 2014). ................................................. 8

*Kalani v. Castle Vill. LLC*
14 F. Supp. 3d 1359 (E.D. Cal. 2014) . .................................................. 1, 5

*Kohler v. Staples the Office Superstore, LLC*
291 F.R.D. 464 (S.D. Cal. 2013). .......................................................... 6

*Munson v. Del Taco, Inc.*
46 Cal.4th 661, 667 (2009) .................................................................... 8

**Statutes**

Americans with Disabilities Act of 1990 ("ADA"), § 2 et seq ...... 1, 5, 12
ADA §308(a) ...................................................................................... 5, 7, 8
42 U.S.C. § 12102(2)(A) ......................................................................... 6
42 U.S.C. § 12101 et seq. ..................................................................... 1, 5
42 U.S.C. § 12188(a) .......................................................................... 5, 7, 8
42 U.S.C. §§ 12183(a)(2) ....................................................................... 5, 6
Cal. Civ. Code § 55.56(2)(A) ........................................................ 9, 10, 11

Cal. Civ. Code § 52(a) ................................................................................ 8

Cal Civ. Code § 51 (f) ............................................................. 8, 9, 10, 11

**Other Authorities**

H.R.Rep. No. 101–485(II), at 104. ........................................................ 7

# PLANTIFF'S REPLY TO
# DEFENDANT'S BRIEF IN OPPOSITION

**I. Allegedly Withholding Evidence.** Defendant repeatedly stated in his opposition papers that the photograph of the "Parking in Rear" sign was withheld from him, and that he was thus not able to prepare a proper defense. Such an assertion is not grounded in evidence. Ms. Lindsay's photographs (including the "Parking in Rear" sign), were disclosed as "plaintiff's photographs" in her initial disclosures. (Ex. 13; Ex 14.) Further, defendant chose not to propound discovery on plaintiff, nor did he request to inspect or copy any of plaintiff's documents. As such, the fact that defendant was not aware of this photo, or any other evidence proffered by plaintiff, is a consequence of how defendant chose to litigate this case, and has nothing to do with defendant's ungrounded accusations that Ms. Lindsay or her attorneys were withholding evidence.

**II. Injury in Fact**. Defendant further alleges that Ms. Lindsay has not suffered an injury in fact. Under the ADA, a public accommodation, such as the subject Restaurant, or the landlord of a public accommodation, may not discriminate against disabled individuals when providing services. Americans with Disabilities Act of 1990, §2 et seq., 42 U.S.C.A. § 12101 et seq. Kalani v. Castle Vill. LLC, 14 F. Supp. 3d 1359 (E.D. Cal. 2014).

A. **Legal Standard**. In order to prevail on an ADA claim, a plaintiff must show that (1) she is disabled within the meaning of the ADA; (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation; and (3) the plaintiff was denied public accommodations by the defendant because of her disability. Americans with Disabilities Act of 1990, §308(a), 42 U.S.C.A. § 12188(a).

(1) Ms. Lindsay is disabled within the meaning of the ADA: (Ex. 2, p2).

(2) The Restaurant is a public accommodation (Ex. 2; p2); (Plaintiff's SUF #6)

(3) The Restaurant advertised "Parking in Rear" in its storefront window. (Ex.2 p7.) When Ms. Lindsay visited on June 16, 2014, she entered the parking in rear to find parking stalls labeled with the Restaurant's name on the wheel stops; there were open parking stalls, but not a single space reserved and marked for persons with disabilities. (Ex. 2, pp8-9.) Parking was one of the services and/or facilities the Restaurant offered to the public, advertised in its storefront window: "Parking in Rear" (Ex. 2, p. 7; Ex.9.) Members of the public who can use non-disabled parking stalls were granted parking at the Restaurant for free. Ms. Lindsay needs a disabled person van parking stall so that she may park her van and exit in her wheelchair safely. (Ex. p10). Ms. Lindsay was denied parking services for the Restaurant because while they offered parking to the public, none of the parking offered was reserved and marked for persons with disability. The restaurant

> did not care to ensure, or think to ensure, that disabled patrons could also "park in rear."

This is a prima facie violation of the ADA. The subject Restaurant offered parking services to its clients, but not to its disabled clients. Ms. Lindsay personally encountered this and has suffered difficulty, frustration, and unequal treatment due to her disability. This is injury in fact.

**III. The Parking Lot had an Open Gate** (Ex. 2, pp7-8; Ex. 9; Ex. 4 p10.) Ms. Lindsay first encountered the lack of accessible parking on June 16, 2014. (Ex. 2 p9; Ex. 9.) Mr. Louis, plaintiff's firm's field investigator, first looked at the property on January 13, 2016, and like Ms. Lindsay before him, he encountered what appeared to be a public lot: the gate was open, and he did not see tenant only signs. (Ex. 3; Ex. 5.) Neither Mr. Louis nor Ms. Lindsay saw no parking signs or tenant only signs prior to Mr. Louis's second examination of the property, roughly three weeks after the Complaint was filed (ECF-1; Ex. 2; Ex. 3; Ex. 5, Ex. 6, Ex. 9.)

Twenty days after the complaint was filed, Mr. Louis returned to examine the property a second time, and it was only then that Mr. Louis saw that defendant had fixed, or installed, a closed gate with a Tenant Parking Only sign across the front. Mr. Louis stated in his declaration that this tenant parking only sign on the gate was present only during in his second investigation of the property on February 22, 2017. (Ex. 3, Ex. 5; Ex 6.)

3

Plaintiff's Reply Brief  Case: Case: 2:16-CV-00917-PSG-E

Defendant claims multiple times in his opposition papers that the sliding metal gate, which closes off the parking, was obviously broken in some of Mr. Louis's photographs from his January 2016 visit, which show the gate open during the middle of the day (Ex. 5). It did not appear broken to Ms. Lindsay or to Mr. Louis (or to anyone who is not an expert in sliding wrought iron gates). To the average, reasonable person, the gate simply appears open—which was to be expected. The Restaurant advertised "Parking in Rear" to patrons with a sign in the storefront window (Ex. 2, p7; Ex.9), and when going around to the back-parking lot, the gate was open. A normal person does not investigate an open gate to see whether it might be broken. The Restaurant said to park in back; the back-parking lot was open. Non-disabled patrons could enjoy the free parking spots the Restaurant advertised to their customers; the Restaurant denied Ms. Lindsay access to their parking in rear because the restaurant did not ensure that disabled patrons could also park in the back lot alongside their non-disabled patrons.

**IV. The Allegedly Malfunctioning Gate.** Defendants claim that gate which now blocks off the parking lot for private use (and allegedly has for years) only malfunctions every once in a while; but, on two dates eighteen months apart (Plaintiff's initial visit on June 16, 2014, and Mr. Louis's initial visit on January 13, 2016) the gate was open, and the public appeared to be welcome (Ex. 2 pp6-8; Ex. 5; Ex. 9). Especially given the storefront window sign inviting patrons to park in the rear. (Ex 2. p7; Ex. 9.)

The timing of the parking lot gate closure is suspicious, as defendants claim to have always kept this gate in a closed position, and yet for a year and a half prior, the gate was ajar; or at the very least, on two dates, eighteen months apart, the gate was open. However, within three weeks after the complaint was filed, defendants apparently "fixed" the gate, and added a tenant only sign to the front of the gate, claiming that this case is moot as the ADA does not apply to a tenant only parking lot (Ex. 3, Ex. 5, Ex. 6.)

**V. Liability with Tenant only Lot**. While making a parking lot "tenant only" removes the property from mandatory compliance with the ADA, voluntarily stopping ADA discrimination does not deprive the Court from determining the legality of the prior actions giving rise to the suit. Americans with Disabilities Act of 1990, §2 et seq., 42 U.S.C.A. § 12101; Kalani v. Castle Vill. LLC, 14 F. Supp. 3d 1359 (E.D. Cal. 2014). While the ADA does not govern any aspect of tenant only parking lots, this lot has not always been tenant-only (Ex. 2, pp 6-9; Ex. 9; Ex. 3, pp7-11; Ex. 5; Ex. 6.). When this parking lot was being used by the public for Restaurant parking, the ADA absolutely applied: "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any private entity who owns, leases (or leases to), or operates a place of public accommodation." 28 CFR 36(201)(a).

The Restaurant discriminated against Ms. Lindsay. The Restaurant provided patrons with free restaurant parking, but the

restaurant did not offer free parking to disabled individuals. Ms. Lindsay personally encountered this violation. (Ex. 2, p9, Ex. 9; Ex 5). Ms. Lindsay needs a disabled van parking stall to park her van and exit the van in her wheelchair, safely and comfortably. (Ex.2 p10.)  However, as a result of there being no disabled van parking, Ms. Lindsay was unable to park her van or dine at the Restaurant with her family.  She was denied equal access to the services and facilities the Restaurant offered its patrons, all due to her disability, which is in clear violation of the law. Id.

**VI. Property Owners are Liable for ADA Violations on Their Property.**  The ADA makes the landlord and tenant of a place of public accommodation each individually responsible for violations on the leased property. Botosan v. Paul McNally Realty, 216 F.3d 827 (9th Cir. 2000.) While a landlord and tenant may use the terms of their lease to allocate costs associated with the ADA *between themselves*, a lease cannot relieve a landlord of its underlying obligations under the ADA. "A public accommodation is responsible for violations of the ADA, and such violations cannot be contracted away" Americans with Disabilities Act of 1990, § 2, 42 U.S.C.A. § 12101. Kohler v. Staples the Office Superstore, LLC, 291 F.R.D. 464 (S.D. Cal. 2013).

While both the property owner and the lessee are liable for ADA violations, through private contract, such as a lease, the property owner and the lessee are able to apportion liability in whole or in part. *However, this is only between the parties*.  As for liability under the law, both the landowner and lessee are liable for violations under the ADA.

"The terms of the lease will not affect the rights of a third party who brings suit under the ADA." Botosan at 833.

Here, defendants have offered up a lease in an attempt to demonstrate control and limitations of control of the property and the parking—that defendants would not have known, or been able to do anything about the Restaurant's offer of free parking in the back lot, as the parking spots were under the Restaurant's control. However, the defendant is liable for ADA or UCRA violations that occurred on its property. The ADA explicitly lists property owners as being liable for violations of the ADA:

"In sum, a public accommodation's obligations are not extended or changed in any manner by virtue of its lease..." H.R.Rep. No. 101–485(II), at 104. The legislative history confirms that a landlord has an independent obligation to comply with the ADA that may not be eliminated by contract. Botosan. 832–33 (9th Cir. 2000).

**VII. UCRA Claim.** Since the complaint was filed, defendants have put up many No Parking / Tenant Parking Only signs, and the gate to the parking now appears to properly function. No tenants are currently advertising public parking in the rear lot. For all intents and purposes, the parking lot now appears to be for tenants only. "Even if a defendant has removed barriers to access and thereby mooted a plaintiff's ADA claim, those remedial measures will not moot a California Unruh Civil Rights Act (UCRA) claim for damages. Americans with Disabilities Act of 1990, §308(a), 42 U.S.C.A. § 12188(a); West's Ann.Cal.Civ.Code § 52(a); Johnson v. Wayside Prop., Inc., 41 F. Supp. 3d 973 (E.D. Cal. 2014).

### A. PROVING DAMAGES

To succeed in an UCRA claim, a party may demonstrate that there was a violation of the Americans with Disabilities Act; a violation of the ADA is a per se violation of UCRA. "A violation of the right of any individual under the Americans with Disabilities Act of 1990…shall also constitute a violation of this section." Unruh Civil Rights Act, Cal Civ. Code §51(f). Under the Unruh Act, a Plaintiff is entitled to recover actual damages and an amount up to three times the actual damages for each violation of the Unruh Act, "but in no case less than $4,000…" for each and every offense (Cal. Civ. Code § 52(a); *Munson v. Del Taco, Inc.* (2009) 46 Cal.4th 661, 667.) In order to maintain an action for these statutory minimum damages, "an individual must… [establish] that he or she was denied full and equal access on a particular occasion." (*Donald v. Cafe Royale Inc.* (1990) 218 Cal.App.3d 168, 183.)

Ms. Lindsay has satisfied this requirement. The Restaurant denied her full and equal access to the parking services and facilities it offered its patrons. There was parking advertised in the storefront window, provided in the rear lot as advertised (with no closed gate), but not provided to persons with disabilities as there were no marked and reserved stalls for disabled individuals to utilize. Ms. Lindsay first encountered this unlawful violation on June 16, 2014 and again, when she returned to attempt to dine in February of 2016. Ms. Lindsay personally encountered the barriers to parking and suffered difficulty and frustration at not being able to park or eat where she wants all due to her disability.

A Plaintiff is entitled to $4,000 for each time she visits an establishment that contains architectural barriers that deny the Plaintiff of full and equal enjoyment of the premises (*Feezor v. Del Taco, Inc.* (2005) 431 F.Supp.2d 1088, 1091.) "Such an interpretation is supported by case law and is consistent with the plain language of UCRA." *Id.* The Plaintiff need not establish that she was wholly excluded from enjoying the Defendant's services, only that she was denied full and equal access (*Hubbard v. Twin Oaks Health and Rehabilitation Center*. (2004) (408 F.Supp.2d 923, 932.)

**B. DEFENDANT INCORRECTLY CITES CAL. CIV. CODE §55.56 (2)(A)** Defendant claims on pages 24-25 of its Memorandum of Points and Authorities that Cal. Civ. Code §55.56 (2)(A) would reduce each $4000 award under UCRA to $2,000, and that since "[n]either party has submitted any evidence that speaks to whether defendants operate such a business" that the court should decline to award damages. (Def Memo of P&A, pgs 24-25.) However, this is not the proper interpretation of this statute. A clear reading of section (2) of the statute demonstrates that this is defendant's burden to show, not plaintiff's.

> (2) Notwithstanding any other law, a defendant's liability for statutory damages in a construction-related accessibility claim against a place of public accommodation is reduced to a minimum of two thousand dollars ($2,000) for each offense **if the defendant demonstrates both of the following** (emphasis added):
> (A) The defendant has corrected all construction-related violations that are the basis of a claim within 30 days of being served with the complaint.
> (B) The defendant is a small business that has employed 25 or fewer employees on average over the past three years, or for the

9

Plaintiff's Reply Brief                                    Case: Case: 2:16-CV-00917-PSG-E

> years it has been in existence if less than three years, as evidenced by wage report forms filed with the Economic Development Department, and has average annual gross receipts of less than three million five hundred thousand dollars ($3,500,000) over the previous three years, or for the years it has been in existence if less than three years, as evidenced by federal or state income tax returns. The average annual gross receipts dollar amount shall be adjusted biannually by the Department of General Services for changes in the California Consumer Price Index for All Urban Consumers, as compiled by the Department of Industrial Relations. The Department of General Services shall post that adjusted amount on its Internet Web site.
> Cal. Civ. Code § 55.56 (West)

Defendant tried to assert that since neither party has offered evidence regarding the defendant's earnings, and since the defendants might qualify for reduced damages, damages cannot be awarded at this time (Defendant's P&A, pg. 24-25). This is an erroneous interpretation of Cal. Civ. Code §55.56 (2), as the statute requires that "**defendant** demonstrate both of the following…" (emphasis added.) Defendant has not proved up the requirements of subsections (A) and (B) above. Thus, withholding an award for damages or discounting statutory damages is not appropriate: had defendant wanted to avail itself of statutory damage reduction, defendant could have provided evidence regarding whether or not defendant qualified for the reduction and provided an analysis (as required by the statute). No such effort has been made here.

//

//

//

//

10

Plaintiff's Reply Brief  Case: Case: 2:16-CV-00917-PSG-E

//

//

## VIII. PRAYER

(1) For two, $4,000 statutory penalties for damages under UCRA, due to the Restaurant's discrimination of Ms. Lindsay, and its denial of equal access to the services, privileges and facilities the Restaurant offered its patrons. (Ms. Lindsay suffered a per se violation of the ADA on June 16, 2014 when she was denied parking services by the subject restaurant. Ms. Lindsay returned nineteen months later to once again attempt to dine at the restaurant, but found the same barriers to access as her prior visit.)

(2) An injunction requiring Defendants to comply with the Americans with Disabilities Act should the parking lot ever be open to the public again.

I declare under penalty of perjury of the laws of the state of California and of the United States of America that the foregoing is true and correct.

Dated: July 3, 2017                 CENTER FOR DISABILITY ACCESS

                                    By: /s/ Sara N. Gunderson
                                    Sara N. Gunderson
                                    Attorneys for Plaintiff